TRULINCS 20446009 - FLEMING, RHONDA ANN - Unit: TAL-A-S

----------------------------------------------------------------------------------------------------

FROM: 20446009
SUBJECT: [Lennard B. Register]
DATE: 05/22/2020 12:55:49 PM

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

RHONDA FLEMING, Petitioner,

STACEY SHANAHAN, Intervener,

v.                      No. 4:20-cv-212-AW-EMT

WARDEN STRONG, Respondent.

PETITIONER'S & INTERVENER'S MOTION FOR EMERGENCY TEMPORARY RESTRAINING ORDER

MOTION TO INTERVENE

MOTION FOR APPOINTMENT OF COUNSEL

MOTION FOR EMERGENCY EVIDENTIARY HEARING

The Petitioner, Rhonda Fleming, and the Putative Intervener, Stacey Shanahan, who are medically vulnerable inmates, move the Court to grant an Emergency TRO, enjoining the Respondent to transfer them to home confinement, immediately, to prevent them from contracting the COVID-19. Additionally, the Petitioner and Intervener move the Court to declare the current Guidance enacted by the Respondent violates the Administrative Procedure Act ("APA"). In support, the Petitioner and Intervener present the following:

CASE BACKGROUND

The Petitioner has filed a Section 2241 Motion challenging the execution of her sentence, specifically the unlawful use of certain Guidance in granting transfers to home confinement based on the Memorandum issued by Attorney General William Barr on April 3, 2020.

The Intervener filed a Section 2241 Motion in May 2020, No. 4:20-cv-00267, but now moves to intervene in this proceeding because the violation of the APA and due process claims are the same transactions with the same parties. The Intervener moves to intervene pursuant to FRCVP, Rule 24.

The Petitioner and Intervener are serving prison terms for non-violent offenses. The Petitioner and Intervener have chronic, pre-existing conditions which weakens their immune systems making them more susceptible to the COVID-19 virus and death. Both parties are prescribed medications that further compromise their immunity to the virus. The Respondent must honestly concede that the Petitioner and Intervener are medically vulnerable prisoners.

CURRENT CONDITIONS AT THE PRISON

FCI-Tallahassee prison officials refuse to administer COVID-19 test or test for antibodies in inmates that have had the virus. The Respondent and other prison officials continue to claim there are no confirmed cases at the prison, while every prison or jail in the surrounding area are reporting hundreds of new cases of inmates and officers being infected.

The prison is overcrowded and unsanitary. The roof leaks in several places, including in the Petitioner's cubicle. Mold is visible all over the ceiling. Watered-down soap is provided 3 times a week, but on weekends the dispensers are empty. The unit where the Petitioner and Intervener are housed, A-South, is too crowded to effectively maintain sanitary conditions during a pandemic. To be blunt, FCI-Tallahassee is a filthy rundown prison before the pandemic. With 80 inmates in the unit, continuously, the conditions are 100% unsanitary.

Inmates in A-South housing unit and other units sleep with their heads about 6-7 inches from the next prisoner. There is no

TRULINCS 20446009 - FLEMING, RHONDA ANN - Unit: TAL-A-S

----------------------------------------------------------------------------------------

opportunity for social distancing and if a hearing is granted, video footage with the inmates in their bunks should be made available to the Court. When one person gets the flu, 60% or more in the unit become ill.

Officers that work at FCI-Tallahassee that have contracted the virus or a member of their family have contracted the virus are being quarantined, however, this is after they have been working in the prison, many times with no protective equipment. Numerous employees at the prison do not wear masks, especially if they believe they are not monitored on surveillance cameras.

An example of this dangerous misconduct occurred on May 3, 2020, when Officer Michum and two inmates from another unit, entered my cubicle with no mask. They were "shopping" for a better locker to take to another unit, something that is not permitted at anytime, and most certainly not during a pandemic, prison quarantine/lockdown. The inmates were allowed to walk all over the unit until they settled on an empty locker in the Petitioner's cubicle. The Petitioner was awakened by all three persons in her cubicle, again it must be stated, with no masks. When she complained about the entire situation, Officer Michum stated, "You are making a big deal out of nothing."

This statement was made the Petitioner after she had read this week's "National Review," a conservative, no-nonsense publication, that gave FACTS about COVID-19. One of those indisputable facts is that in the New Jersey/New York area, actual deaths were up 30%. This cannot be made up, when this statement of facts is accompanied by a picture of a cemetery with 10 or more graves being dug. The Petitioner and Intervener have reasonable fear for their lives.

The example of the conduct of Officer Michum, which is on video, is one of many examples of a lassiz faire attitude about the virus. Many at the prison are still saying it is a "hoax" not real, just made up.

The prison quarantine is not taken seriously. Lt. Foreman was regularly harassing inmates about whether they were carrying their identification card while he had no mask. One inmate made her own mask before any mask were given to us, and the was told to take it off. Unfortunately, one of the wardens that the Petitioner likes, AW Neely, was part of this harassment of the inmate. But, the truth must be told whether they are likable or not.

When inmates are taken to the infirmary, other inmates from other units are sitting there unmasked and no one is enforcing the use of the mask in the infirmary. The prison has no doctor. The Petitioner waited for two hours on May 20, 2020 to see the physician's assistant, after waiting over two weeks for an appointment, and was sent back to the housing unit without seeing anyone. Why? The other personnel said the PA was overwhelmed and could not see anyone else, and was leaving. It is a fair statement, not hyperbole, to say FCI-Tallahassee's medical care is inadequate in normal conditions and non-existent during the pandemic. Again, as prisoners, the Petitioner and Intervener only state facts that can be proven by video surveillance or medical records. (Even PA Alexander is walking around with no mask on May 18, 2020)(We like the PA, but the truth is the truth...on video).

ARGUMENTS AND AUTHORITIES IN SUPPORT OF THE ISSUANCE OF A TRO

First, the Petitioner and Intervener state they are not challenging the conditions of their confinement. They are reporting the conditions in relation to the virus and their need to be transferred for protection to home confinement. To qualify for a TRO, the Petitioner and Intervener must prove:

1. Likelihood of Success on the Merits;
2. Irreparable Harm to the Movants if Relief is not Granted;
3. Threatened Injury outweighs harm, if any, to the Respondent; and,
4. Public Interest will not be Impaired if Granted.
See, DeYoung v. Owens, 646 F.3d 1319, 1324 (11th Cir. 2011).

The Petitioner and Intervener rely heavily on Thakker v. Doll, No. 1:20-cv-00480, LEXIS 59459, (M.D. Pa. Mar. 31, 2020), where ICE detainees filed a Section 2241 Motion alleging they needed to be released to protect them from the virus. Relief was granted in Thakker, and many other district courts in other circuits followed the reasoning of Thakker. Please see, Bent v. Barr, No. 19-cr-06123-DMR, LEXIS 62792 (N.D. Cal. Apr. 9, 2020); Fofana v. Albence, No. 20-10869, LEXIS 65941 (E.D. Mich. Apr. 15, 2020); and Basank v. Decker, No. 20Civ2518(AT), LEXIS 553191, (SDNY Apr. 15, 2020), all holding that relief should be granted to protect the detainees, who for the most part are subject to mandatory deportation, for committing crimes while in the United States.

The Petitioner and Intervener, are black and white, respectively, American natural-born citizens, who love their country. It is their belief that if the lives of detainees in the custody of ICE can be trusted to be in the community, to protect them from the

TRULINCS 20446009 - FLEMING, RHONDA ANN - Unit: TAL-A-S

---

virus, the Petitioner and Intervener pray they will receive the same treatment, especially in light of the CARES Act and the Attorney General's Memo on April 3, 2020.

There is a strong likelihood of success. Attorney General William Barr issued a Memorandum on April 3, 2020, instructing the BOP and the Respondent to transfer medically vulnerable inmates to home confinement, who were not sex offenders, committed violent crimes, or terrorist. This was the criteria set by the Attorney General and the President of the United States.

From this plain, common sense Memo, the Respondent and other unknown persons participated in rulemaking in violation of the APA, without the mandatory "notice and comment" period. See, 5 USC Section 553. The Guidance on the Memo was promulgated in violation of the APA. See, United States v. Maiello, 805 F.3d 992, 998 (11th Cir. 2015)(holding, "...Congress made proposed guidelines, but not changes in policy statement subject to the APA's notice and comment provisions.") The Respondent was required to comply with Section 553's rulemaking requirements.

In Hurt v. FBOP, 323 F.Supp.2d 1358, n. 4-5 (M.D. Ga. 2003), the district court held that another Memo issued by the Department of Justice was subject to the APA, stating, "it is clear from Jean [v. Nelson, 711 F.2d 1455, 1476 (11th Cir. 1983)] that a drastic change in policy is considered rule making subject to the requirements of the APA."

Clearly, there is a likelihood of success on the merits.

Irreparable harm is happening at this time. The Petitioner and Intervener are in a high, stress environment, in emotional distress because they fear for their lives. Well over 50 inmates have died in the BOP's custody and it seems not to matter to those making the rules. COVID-19 is highly contagious and has proven deadly for those in nursing homes and prisons. Again, please note, on video, the senior medical personel, the Physician's Assistant was not wearing a mask 4 days ago.

The Petitioner and Intervener have pre-existing conditions which have compromised their immune systems. They are requesting protection from the first wave and the likely second wave of the virus.

In the Thakker case, the district court held that inmates did not have to die or suffer from the virus to obtain relief. They only had to prove they were more susceptible than normal. Dr. Jonathan Louis Golob provided a declaration in the Thakker case, stating that some people are at higher risk of experiencing serious complications from the COVID-19. This high risk category includes people like the Petitioner and Intervener, including people over 50, with certain medical conditions.

The Intervener is on medications that weaken her immune system. The prison has stopped giving her other medications for a severe skin condition, that has become infected, in an environment that is filthy. The Court may review Shanahan v. Warden Strong, that is filed in this district for full details of the Intervener's medical condition.

The Petitioner is over 50, taking medications that weaken her immune system, has a chronic medical condition, a blood disorder that is not curable, and she is African-American, a group that has a 30% higher likelihood of death if the virus is contracted.

The Petitioner and the Intervener are clearly the type of prisoners the Attorney General, in his mercy, intended to protect from harm. No one could envision a possibility that the lives on non-citizens would be more deserving of protection, than persons that are citizens of this country.

In the balance of equities, the Respondent suffers no harm by the Court granting the relief intended for the Petitioner and Intervener to receive--transfer to home confinement for their protection from the virus and to assist in reducing the prison population so that some degree of social distancing can be practiced. There is no harm or disservice to the public because prisoners that become infected with the virus are a threat to those that work at the prison and subsequently, the public itself. Additionally, by transferring non-violent inmates to home confinement, the public does not suffer the cost of their care if an inmate becomes infected.

For the reasons stated above, the Petitioner and Intervener pray the Court will grant an emergency hearing, appoint counsel, and ultimately grant transfer to home confinement. The prison officials already have the addresses where the Petitioner and Intervener will reside.

Respectfully,

Rhonda Fleming, Petitioner
May 22, 2020

TRULINCS 20446009 - FLEMING, RHONDA ANN - Unit: TAL-A-S

---

*Stacey Shanahan*
Stacey Shanahan, Intervener
May 22, 2020

CERTIFICATE OF SERVICE

AUSA Lennard B. Register will be served by email and by the electronic filing of this Motion by the U.S. Clerk.

*Rhonda Fleming*



Rhonda Fleming 20946-009
FCI-Tallahassee
PO Box 5000
Tallahassee, FL 32314

United District Court
Office of the Clerk
1 North Palafox Street
Pensacola, FL 32502

Legal Mail

32502$5658 C003